Okay, the next target case is number 162080. Microsoft Corporation v. Biscotti, Inc. Mr. Trella. Thank you, Your Honor, and may it please the Court. The invention of the 182 patent was, according to the patent and the arguments below, a video conferencing system that improved on existing systems by allowing you to move video conferencing out of the office into the living room and allowing a setup where you could have two people on calls from different locations basically watching the same TV show or sporting event. Now the claims at issue here, 6 and 69, don't actually call for any of that. Those claims are collections of generic parts commonly used in video conferencing systems and used for the normal purposes without any particular novel arrangement or combination. In addition, the Conoyer patent that we asserted below anticipates these claims. Under Section 102, a claim is anticipated if it's described in a prior patent or publication. Does it mean that the prior reference has to have a specific embodiment? And our standard review is substantial evidence on anticipation, correct? Your standard review on factual determinations on anticipation is substantial evidence. I'm telling you this so that you can kind of go to the core of my concern, and that is that I may agree with all your arguments, but the problem is that I'm looking at this from a substantial evidence point of view. We do have an expert's declaration, and the Board does go out and base part of the reasoning on that declaration. That's a big hurdle for you to get over. What are you going to do? How do you deal with that problem? Let me address that in two ways, Your Honor. First of all, sure, there are expert declarations, but the Board's determinations in this case had nothing to do with any expert opinions. This is a matter of reading plain English, reading the Conoyer reference and reading plain English. There are no terms of art. The Board relied on expert testimony and specifically rejected your expert testimony. Well, I'm sorry. Anticipation is a question of fact. I was shocked that you tried to make the argument that it's not. I mean, our case law is very clear on this, that anticipation is a question of fact. What a prior art reference teaches is a question of fact. It's supposed to be looked at from the perspective of one of skill in the art. So there were experts of skill in the art who talked about what that prior reference showed. Your Honor, we completely recognize that anticipation is a question of fact, substantial evidence review. But here we think the Board made a legal error because it was looking for specific linking, specific cross-references in Conoyer where Conoyer says one thing in one column and then refers again without repeating everything in the next column, and the Board found that deficient. Well, that's a very different argument than your argument that somehow we shouldn't treat anticipation as a question of fact. Well, and if we gave the impression that we were saying generally you shouldn't treat anticipation as a question of fact, then that's my mistake. That certainly wasn't what we were trying to convey. What we're saying here is that the way the Board read Conoyer, it was looking for specific cross-references linking specific language that we think as a legal matter the anticipation standard doesn't require. And maybe the best way to get into this is let me talk about the findings, the way the Board decided the case, and I think that makes two points. I think one is it shows that the Board misapplied the legal standard by requiring more than the statute requires. The statute says described. It doesn't say exactly replicated. But it is required that it has to at least be able to envisage. At once envisage or immediately recognize or something like that. But in the order laid out in the claims. Well, that's true. Pardon me. Although it's also important to note here that there's no particular order that's important in these claims. They're a collection of parts. There's no detailed part-to-part relationships or anything like that. So certainly that proposition laid out as arranged in the claims is true. But where the arrangement in the claims is not of any particular import, that enters into the analysis, I think. Yeah, the problem is that the Board actually, I mean, I agree with all your laying out what you think the standards are for anticipation determination. And it appears the Board did as well. They laid out all of those standards. They cited them all. And so it seems to me that you're really more complaining about the way they applied those standards to this particular reference. Well, I think that's fair. So let me talk about how they applied it. Because I think, frankly, I think that shows that they misapplied the legal standard. And I also think it shows that even under a deferential substantial evidence standard, the Board should be reversed. So Claim 6, the only issue with respect to Claim 6 has to do with the limitation requiring certain instructions. And it's undisputed that Knoyer in Column 15 discloses that embodiments, I think his terms are embodiments or portions of embodiments above can be executed by instructions stored in a storage medium executed by a processor. Now, the Board concluded that that was not a sufficient disclosure of the Claim 6 limitation because the Board read that as referring only to the immediately preceding embodiment, the Figure 22 embodiment. That was a mistake. That misreads the plain English, the plain language of Knoyer. And also, frankly, even if it did refer only to the Figure 22 embodiment, all the instructions are there. All the functions to be performed are there. Now, this instruction, the program instruction sentence in Knoyer begins a paragraph. You're not suggesting that we combine embodiments, right? No, not at all. And I think that's part of where the Board went astray. What you have in Knoyer is you have a set of paragraphs after it's walked through all of the different embodiments and figures. And this program instruction sentence says, Embodiments or portions of embodiments described above may be implemented by program instructions in a storage medium executed by a processor. Now, there's no dispute that in the embodiments described above, all of these various functions that Claim 6 requires are disclosed. There was no dispute about that, but the Board said, we're not going to read that sentence as applying to everything up above. We're going to read it as applying only to the Figure 22 embodiment. Now, even if you do that, even if you just focus on the Figure 22 embodiment, it discloses all of those Claim 6 instructions. The first two instructions are instructions for controlling the audio capture device and the video capture device. And the description of embodiment of Figure 22 expressly lays out having a video capture device, namely a camera, which is one of the options that the 182 patent identifies, and a microphone, the audio capture device. So there's really no dispute about those. Now, the Figure 22 method also calls for processing the video and audio for transmission. So are you arguing now that Figure 22 alone is enough to anticipate Claim 6? We are. Okay. Well, where was that in your petition? We argued that below in this fashion. When we argued that Knoyer discloses all the instructions, each time we identified one we cited to Column 15, which is that description of the Figure 22 embodiment. Now, we didn't call it out and say, you know, as I did. We didn't use the words that I just did, which is even if you ignore the rest of the disclosure, you can just look at the Figure 22 embodiment. But each instruction we pointed to the Column 15 description and cited to those particular steps in that description of that method. As we pointed out in our opening and reply briefs here. Is it fair to say that what the Board really relied on was just the order in which the steps were performed? No, I don't think that's true, Your Honor. I think what the Board relied on was just that. I think the Board made two mistakes with respect to Claim 6. One is it limited that program instruction sentence just to the Figure 22 embodiment. And then having done that, it failed to look at the Figure 22 embodiment to see that, in fact, those steps are there. Can you point me to a page, a paragraph site, a page site in your IPR, in your petition, where you rely on 22 solely with respect, saying that that alone is enough as it relates to Claim 6? I can't because we didn't say it that way. What we said was we cited to the Figure 22 embodiment in identifying places in Knoyer where it disclosed each of the functions implemented by the Program Instructions. Okay, but you can't tell me where you did that? Oh, sure I can. I'll give you several sites. Appendix pages 177 and 78, 245 to 46, 1401 to 02, 8424 to 25. These are all places where we talk about the instructions and we reference the Column 15 discussion in Knoyer where it lays out those. And that's in your IPR? That's in your petition? I think the first few pages are there. 177 to 78. The petition, I think, according to the statute, refers to you only have to show one claim. Is your sense that the law has evolved to the stage where the petition has to have everything that's going to be evolved during the ensuing trial? No, I don't think that's true, Your Honor. I think you're right. It has to show enough to institute on one claim. I mean, you can't bring in new prior art, but I don't think it constrains you that narrowly in terms of the arguments you make. Now, if I could turn very briefly to Claim 69, which was the other independent claim at issue. And as with Claim 6, the focus here was on a single limitation, and that was receiving an audiovisual stream from a set-top box on an audiovisual interface. Now, Knoyer, in Column 10, expressly discloses connecting its codec to a set-top box with signals from the set-top box, passing through the codec to the display when there's no call going on, and basically in both going through when a call is going on. That is the Claim 69 limitation. Now, the mistake the Board made there was it said, well, there's nothing in that particular passage that talks about the audiovisual inputs. Well, apart from the fact that there have to be because the signal is going from the set-top box through the codec, Columns 7 through 9, the immediately preceding discussion, went through the explanation of the external codec in detail and explained the audiovisual inputs that it has, including giving specific examples that were the same as the examples in the 1A2 pattern, things like S-video, VGA, DVI inputs, the RCA inputs for the audio. So it was all there, and essentially what the Board was requiring was that all of this be repeated. Again, each time you mention the codec, but when the same term is used throughout a specification, persons of ordinary skill understand, well, okay, yeah, I just read about the codec, and now they're talking about connecting that codec to a set-top box. So that Claim 69 limitation is expressly there. The other thing I would say on that, and this goes to the claim construction issue we argued, the way set-top box is defined in the 1A2 patent, it's broad enough to include a computer with the capability to bring in signals and transmit video. A couple of places in Knoyer, in Column 8 and Column 9, expressly disclosed the codec receiving video input from a computer. So had the Board recognized that a set-top box, as defined in the 1A2 patent, is broad enough to include a computer as used in Knoyer, it would have seen multiple disclosures of this Claim 69 receiving audiovisual input limitation. Okay, and I just want to clarify. You have disclaimed any reliance on Figures 7A and B in connection with this. That's correct, and I'm glad you asked that. The discussion of this external codec, the stand-alone codec connected to a set-top box, follows right after. It's in the same paragraph, basically, as the description of Figures 7A and 7B, but it's expressly set out as different because Figures 7A and 7B are about an integrated set-top box and codec. And then it says, or the codec can be separately housed, in which case it's coupled to the set-top box and can pass through audiovisual signals. So these are two different things. They happen to appear close in physical location, but they're different embodiments and we are not relying on Figures 7A and 7B. I'd like to reserve the rest of my time.  Thank you, Connie. Mr. O'Quinn. Thank you, Judge Newman. May it please the Court, John O'Quinn on behalf of the Scotty. This case is controlled by the Board's factual findings and the standard of review. And I'd like to turn to... Is there a situation at all? I mean, if every case that we deal with where we're reviewing in anticipation determination, if there's the substantial evidence, as I said in this case I saw, does that mean that's it? There's no room for legal error? Well, Judge Ray, it's certainly possible that the Board could misstate the law and misapply the law of anticipation. The Board didn't do that here. In fact, the Board recited the very cases that Microsoft relies on for the very proposition that Microsoft relies on them for. So I suppose that if the Board were to say in order to anticipate, were to impose a requirement that this Court has not found to be in the law of anticipation or the Supreme Court has not imposed it, yes, there could be a legal question. How about in the reasoning? Other than just like a misapplication, okay, set that aside. Just in the legal reasoning where they're looking at applying certain limitations in the prior reference to just part of the claims at issue but not to the entire claims at issue. Judge Ray, I think once you've gotten to the application of a piece of prior art to the claims that are at issue, that's the world of substantial evidence review. And I think that, of course, the Board and district courts can commit error in doing that, but that is reviewed for substantial evidence. What about the argument that there is a legal error because before they even got to that point, they should have construed the claims so they knew what they were looking for in Knoyer in terms of the set-top box at least? Thank you for that question, Judge O'Malley. With respect to set-top box, there was never an argument made to the Board by Microsoft about why anything turned on the construction that it was advocating. Microsoft never advocated to the Board in its petitions or in its replies why its particular construction would change the outcome with respect to that case. Now, the one thing that they cite in their brief, it says CEG Appendix 1450. You're talking about the construction that it's a computer? The construction of the term set-top box and whether that could encompass a computer. And the question is, did they ever advocate to the Board that the computer of Knoyer would satisfy the set-top box limitation? And the answer to that question is no. And that's why the Board didn't need to construe the term set-top box. It applied in the plain and ordinary meaning. They had the opportunity under that construct to argue to the Board that the computer of Knoyer was a set-top box. You will not find that argument in their briefing. It's not in the petition. So are you saying that what Mr. Trella just said to me, which is the reference to column 10, lines 25 through 35 in Knoyer, that he didn't actually make that argument to the Board? The only argument that they made to the Board, and it's the only thing they cite in their brief, and it's telling. It says CEG, but this is it. It's the one thing that they cite is Appendix 1453. And it comes after a discussion. It comes in a discussion in their reply in which we had made the argument that they were mixing and matching references, so that they were mixing and matching different embodiments, Judge Rayna. They absolutely were doing that. And we had made that argument. We said that they were mixing and matching between a set-top box embodiment and a computer embodiment. And at the end of that discussion, they say, quote, Moreover, a computer can be a set-top box, which the 182 patent defines as a device that can provide tuning, decryption, and or decoding functionality for the reception of broadcasts, cable, and or satellite television signals. End quote. That's it. It's not followed by an argument that this is what is then disclosed by Knoyer, that a person of ordinary skill in the art would immediately recognize that the computer in Knoyer could be that computation. You're saying they didn't say enough? I'm trying to understand this argument. How many times does someone have to make a point before we accept that it was communicated to the board? Well, I think at a minimum, once. And what I'm telling you is the number of times that an argument was made that Knoyer disclosed a computer that satisfied the limitations of the 182 patent Claim 6. And we're just talking about Claim 6. None of these arguments affect Claim 69. That argument was never made. And in fact, their expert conceded in his deposition that he was asked, you know, can a computer be a set-top box? And the answer was, this is in Appendix 10, 749, quote, you have to look at what the computer is capable of. You have to show me the computer, and I have to look at what it can do. And he conceded that it was, quote, not a standard portion of a PC that you would just buy off the shelf that would provide the tuning capability to receive the signals. That's at Appendix 10, 750. There are certainly no arguments. So it says you can't buy the set-top box off the shelf. But where does it say that it can't be a computer? Oh, my point was simply, it was not that you can't imagine having a computer that you would add things to that perhaps could satisfy the construction of set-top box that they are advocating. My point simply, they never argued to the board that the computer of Knoyer satisfied that limitation. And in fact, if you look at their petition, they were always relying on the combination of set-top box 705 with other features, and you can see that at Appendix 172 to 176. So your point is that if the expert conceded that it would have to be a particular type of computer, that there was never any argument that Knoyer met that standard. There was never any argument that the computer of Knoyer met the standard of being a set-top box. And indeed, their concessions from their expert demonstrate that you can't just simply say, well, any person would assume that any person of ordinary skill in the art would assume that any generic computer would be a set-top box. And in fact, their expert conceded that that's not true. So that issue was never presented to the board, and it dovetails into his arguments about Figure 22. They also did not argue to the board that the embodiment with respect to Figure 22 was sufficient to anticipate. And indeed, if you look at Appendix 172 to 176, and you can look at Appendix 173 in particular, where they're making reference to set-top box 705 in order to be able to satisfy the set-top box limitations. How specific does the petition itself actually have to be? I mean, if they cite to a particular reference and say this reference anticipates that clearly they're supposed to spell out in what ways, but do they have to say every possible theory that they have for that? Well, I don't know, Judge O'Malley, that they have to spell out every possible theory, but it certainly has to be presented to the board at some point. And it's not in the petition, and it's not in the reply. And indeed, as I said, the only argument with respect to the reply is the one page that they cite in their briefs. And that doesn't get you there. That's just simply a statement that a computer might be able to be a set-top box, but not any argument to the board about why the computer disclosed in Knoyer would satisfy the set-top box limitation. And so that, I would say, is an argument that they have not properly presented to the board and certainly not properly preserved for this court. Now, that's with respect to Claim 6. Would you comment on this issue of the breadth of the prior Knoyer and others does speak very broadly. And these claims are broad. And in trying to focus on the specificity, because I gather that you haven't really focused particularly on any of the subordinate claims, they all rise and fall together. Is that right? Well, I don't think that that's quite correct, Judge Newman, in the sense that they certainly don't all fall together. The arguments that the board reached, the board only reached a subset of the arguments that we presented. And in fact, I think the board probably started with the storage medium limitation, because if you look at Appendix 1977, that's where we actually started our argument in front of the board. The board didn't reach, for example, the consolidated output stream issue with respect to both independent Claim 69 and with respect to a number of the dependent claims of Claim 6. Now, it is true that the board's reasoning with respect to Claim 6 turned on the storage medium limitation. But the board also had the very same argument about interfaces before it with respect to Claim 6 that it had with respect to Claim 69. It just didn't reach it in its analysis of Claim 6. But the analysis with respect to Claim 69 was separate and apart from the issue of the storage medium and the software, whether or not you had the software that was encoded with specific instructions. That issue turned on how you read the specification of Conoyer. And it turned on our experts' analysis and the board's consideration of their expert, of the program instruction sentence, and other features of Conoyer. That is with respect to Claim 6. With respect to Claim 69, the issue there was the interfaces and whether or not that you had an input interface from a set-top box to the codec. And the argument that Mr. Trella has made is, well, you know it's the same codec because it refers to codec throughout. But that's not really a fair interpretation of the specification of Conoyer. And it's not the one that the board adopted. Because, in fact, there are different codecs that are referred to within the specification of Conoyer. There is a Codec 209. There's a Codec 309. When the specification intends to refer to Codec 309, it does so. You can see it referred to in Figure 3. With respect to Figure 5, with respect to Figure 6, I believe also with respect to Figure 8. But in the Figure 9 embodiments, excuse me, in the Figure 7a and 7b embodiments, and in the discussion that also goes with those embodiments, there's no reference to Codec 309. And there's no discussion with respect to the set-top box. I forget how the specification refers to it. The coupled standalone housing with the set-top box. There's no reference back to Codec 309. But let me tell you what troubles me about this case. The claims which have survived, it seems to me, can be read and would be infringed by Conoyer. And that, of course, that would end the anticipation issue. So because of their breadth, how do we get to the point so the claims must be read so that acting, pursuing the Conoyer procedure would not be covered by these claims? Well, Judge Newman, I think you can imagine a situation all the time where you have something that could be designed with pursuance of prior art that would infringe both the prior art and the subsequent patents. That is a matter of imagination, but just without any complex claim interpretation or construction. Accepting, for the sake of my question, that there are differences. At the same time, looking at the claims and the scope with which they are before us at the moment, it does look as if anyone practicing what Conoyer tells you to do would be infringing these claims. Oh, well, I don't think that that is true at all, Judge Newman. For example, with respect to these claims, various functions have to be performed using a software solution. Various aspects of the claims have to be performed with a software solution. But there is a software solution. You're saying there's no software solution in Conoyer? Well, not necessarily, and there's certainly not one that is disclosed with respect to the elements that we have been talking about. That's the very argument about why it is that Conoyer does not anticipate. The only software solution that it discloses is with respect to a subset of the instructions that are required by Conoyer. So just like— Well, why does that matter? Why wouldn't that be anticipatory? Well, Judge Reina, in the same way that I think, if I could use the old chestnut about the windshield wiper, a patent on a windshield wiper doesn't anticipate a patent on the intermittent windshield wiper. They may both be windshield wipers, and it may be that the person who is practicing the earlier in time— Well, it would be if all you're looking for is a windshield wiper. Right, but the point is the 182 requires more. The 182 requires specific configurations in specific ways, specific combinations of hardware and software solutions that are not disclosed by the Conoyer reference. Now, it may be that somebody who would be practicing our patent would also be practicing Conoyer. So what specific program instruction would you argue is not performed by Conoyer? Oh, sure. The board found that the encoding limitations, that is that you would have the encoding of packets being done, that that was not disclosed with respect to the embodiment that went with figure 22. And this feeds back into the argument of why it was that there had to be a mixing and matching and combining of embodiments. And the same is true with having the input from a set-top box. That's something that is required both by Claim 6 and by Claim 69. This was the grounds on which the board decided the Claim 69 issue. And that is something that is not disclosed by Conoyer either. They made various arguments about why you should assume that it's the same Kodak, that it's the Kodak that's used with the set-top box must necessarily be the same Kodak that's disclosed in figure 5. But there's no reason to assume that a Kodak that is used with a personal computer should be the same one that's used with a cable television receiving box. And certainly nothing in Conoyer discloses that. And so that takes you outside the world of anticipation and a combination of disparate embodiments, which is exactly what this board held in net money in was inappropriate for purposes of anticipation. And that's what this comes down to. Are all of the elements present here as arranged in the claims of the 182 patent? The board found on the facts, relying on expert evidence, that the answer to that question is no. And I submit that that is ultimately dispositive with respect to this case. I'm happy to answer any additional questions. No questions. Good. Thank you, Mr. O'Quinn. Let me make a few points, and I'd like to pick up on the answer that Mr. O'Quinn just gave about the encoding limitation. I think the question was what instruction is not shown in Conoyer. Even if you focus only on the figure 22 embodiment, and that's in column 15 of Conoyer, it specifically talks about codec 309. So there's no confusion about what codec it's talking about. And specifically this is about line 12 or so. The codec 309 may receive remote video and audio. The codec 309 may process the remote video and audio. The specification makes it clear throughout, using that specific designation of codec 309, that it transmits and receives signals using the Internet protocol. It's undisputed that that requires that the data be placed into packets and transmitted in a stream of packets. So it's there in the figure 22 embodiment. Besides being throughout the specification, because the discussion of using the Internet protocol is, the specification is replete with references to that. Is it possible to practice encoding of packets without the use of a computer? Is it possible? I think it's possible to do it without what you would call a fully functioned computer. You would have to have some sort of a circuit or a processor with instructions that would perform that function. But that may be all it does. It could be a dedicated device, if you will, that would do that. A computer obviously will do it. But I think you could have a stand-alone. So where did you argue to the board that the particular computer of Knoyer satisfied all of this? Because your expert did concede that some computers might be able to do this and some not. So where did you argue that this particular computer structured this way satisfied that limitation, that function? In the appendix at pages 1452 through 1454, and there are other places, but this is an example. The patent owner was arguing that the various interfaces and other capabilities that we said Knoyer showed only related to a computer, not to a set-top box. And we went on and argued that the way set-top box is defined in the 182 patent, it is broad enough to encompass a computer, and Knoyer describes a computer. Yeah, but that's a big difference. Well, it's a difference, but I think that that's an issue for the board. The problem with the board's decision is it didn't even allow for the possibility that the computer described in Knoyer could serve the purpose of the set-top box. Well, they don't have to just allow for the possibility if you don't make the argument. I think we made the argument right here. I mean, we say at the bottom of 1453, a computer can be an STP set-top box, which the 182 patent defines as a device that can provide video tuning, et cetera. Computers by 2008 could contain tuners for broadcast reception. And I think it's important to note that the computer in Knoyer is expressly described as providing video output to the codec. So that capability is certainly at least suggested there, and it seems to be the data in the middle. Is that type of suggestion enough in anticipation? I think it's enough to put the issue before the board, and the board ended up not deciding that issue because it didn't even allow for that possibility. And you made this argument already. Well, we made this argument as I just laid it out, yes. Now, the other thing I'd like to address is... Did you make that argument before the board? Yes, yes. I mean, when I said that, I was referring to those appendix pages. And there are other places where we've made essentially the same argument. Now, the other thing I want to comment on, and just so there's no confusion, and Judge Amell, you had asked a question about whether what I had told you about the disclosure in column 10 of Knoyer was somehow... hadn't been made to the board. That was actually the focus of the argument to the board was... because this has nothing to do with does a computer equal a set-top box or anything. The disclosure in column 10 is... and I'll just read it. The codec may also be in an independent housing that is coupled to the set-top box and receives programming from it. The codec has been described in the prior three columns as having these audio-visual inputs. It's receiving the set-top box, and that is the Claim 69 limitation. The last thing I'll say, I'm out of time. The codec 309 designation is used when Knoyer is specifically referencing a particular drawing. It's not like he's saying codec 309 is different from every other codec. It uses that designation when he's referring to a particular figure. Thank you very much. Thank you. Thank you both. The case is taken under submission.